1

2

3

4              UNITED STATES DISTRICT COURT

5              NORTHERN DISTRICT OF CALIFORNIA

6

7    DCR WORKFORCE, INC.,                    Case No. 21-cv-06066-EMC

8              Plaintiff,

9         v.                                 **ORDER GRANTING IN PART AND
                                             DENYING IN PART DEFENDANT'S
10   COUPA SOFTWARE INCORPORATED,            MOTION FOR ATTORNEYS' FEES**

11             Defendant.                    Docket No. 70

12

13

14        This case arises out of a contract dispute between Plaintiff DCR Workforce, Inc. and

15   Defendant Coupa Software, Inc.  The Court previously dismissed Plaintiff's complaint and entered

16   judgment for Defendant.  Docket Nos. 68, 69.  Now pending is Defendant's motion for attorneys'

17   fees pursuant to the parties' contractual agreement.  Docket No. 70.

18        For the following reasons, the Court **GRANTS in PART and DENIES in PART**

19   Defendant's motion for attorneys' fees.

20                    I.        **BACKGROUND**

21        On July 13, 2018, Plaintiff DCR Workforce, Inc. and Defendant Coupa Software Inc.

22   entered into an Asset Purchase Agreement ("APA") governing the sale, transfer, and assignment

23   of Plaintiff's Vendor Management System ("VMS") Products.  Docket No. 18-1 ("Complaint") ¶

24   11.  The APA provided that Plaintiff would receive $25 million dollars in cash and "Contingent

25   Stock Consideration of up to 668,740 shares of Defendant's Common Stock subject to the terms

26   of Schedule 2.13 of the Asset Purchase Agreement."  *Id.* ¶ 13.  Pursuant to Schedule 2.13 of the

27   APA, Plaintiff was eligible to earn Contingent Stock Consideration if the VMS Business met three

28   pre-defined revenue targets covering three eligibility periods.  *Id.* ¶ 14.

United States District Court
Northern District of California

1    In December 2019, Defendant issued the "First Earnout Tranche" after the VMS Products

2    hit the first revenue target for the period from the Closing Date (August 1, 2018) through October

3    31, 2019.  Complaint ¶ 22.  On or around March 29, 2021, Defendant issued a Final Earnout

4    Statement for the Second Tranche, notifying Plaintiff that the VMS Products had failed to hit the

5    second revenue milestone and, as a result, Defendant would not issue the "Second Earnout

6    Tranche" for the November 1, 2019–February 28, 2021 period.  *Id.* ¶¶ 19, 24-25.

7    Based on Defendant's determination that Plaintiff was not entitled to the Second Earnout

8    Tranche, Plaintiff sued Defendant in the Fifteenth Judicial Circuit in and for Palm Beach County,

9    Florida, raising eight claims: Breach of Contract (Count 1); Breach of the Covenant of Good Faith

10   and Fair Dealing (Count 2); Unjust Enrichment (Count 3), Declaratory Relief (Count 4), Equitable

11   Accounting (Count 5), Specific Performance (Count 6), Fraud in the Inducement (Count 7), and

12   Negligent Misrepresentation (Count 8).  *Id.* ¶¶ 7-157.  Plaintiff sought damages "in excess of

13   approximately $72,326,752."  *Id.* ¶ 107.

14   Defendant timely removed the action to federal court in the Southern District of Florida.

15   Docket No. 1.  The U.S. District Court for the Southern District of Florida granted Defendant's

16   motion to transfer the case to this Court pursuant to 28 U.S.C. § 1404(a), on the basis of the forum

17   selection clause in the APA.  Docket No. 46; APA § 11.1(a) ("if such Action is initiated by Seller,

18   venue shall lie solely in San Mateo County, California").  Plaintiff moved to compel filing of

19   documents or, in the alternative, to remand the case to state court, arguing Defendant's Notice of

20   Removal was procedurally deficient pursuant to 27 U.S.C. § 1447(c).  Docket No. 34.

21   Concurrently, Defendant moved to dismiss the complaint.  Docket No. 32.  The Court denied

22   Plaintiff's motion to compel or remand and granted Defendant's motion to dismiss.  Docket No.

23   68.  The Court determined that amendment would be futile and dismissed the complaint without

24   leave to amend.  *Id.* at 20-21.  The Court entered judgment for Defendant.  Docket No. 69.

25   Now pending is Defendant's motion for attorneys' fees pursuant to the parties' agreement

26   in the APA.  Docket No. 70; *see* APA § 11.8 ("Should suit be brought to enforce or interpret any

27   part of this Agreement, the prevailing party shall be entitled to recover, as an element of the costs

28   of suit and not as damages, reasonable attorneys' fees to be fixed by the court (including costs,

United States District Court
Northern District of California

2

1    expenses and fees on any appeal).").

2                              II.      **CHOICE OF LAW**

3        In diversity jurisdiction cases, such as this one, the Ninth Circuit has held that the forum

4    state's choice-of-law rules.  *First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1153 (9th Cir.

5    2015).  California courts apply the principles set forth in the Restatement (Second) of Conflict of

6    Laws § 187 to determine the law governing a contract with a choice-of-law provision.  *Nedlloyd*

7    *Lines B.V. v. Superior Court*, 11 Cal.Rptr.2d 330, 333-34 (1992).  Under § 187, the law of the

8    state chosen by the parties applies unless either (1) "the chosen state has no substantial

9    relationship to the parties or the transaction and there is no other reasonable basis for the parties

10   [sic] choice," or (2) the "application of the law of the chosen state would be contrary to a

11   fundamental policy of a state which has a materially greater interest than the chosen state in the

12   determination of the particular issue."  *Id.* at 333 (quoting Restatement (Second) Conflict of Laws

13   § 187(2) (1971)).

14       Here, the parties do not dispute that the APA's choice-of-law provision that Delaware

15   substantive law governs all of Plaintiff's claims because they relate to the validity of the

16   agreement, construction of its terms and/or the rights and duties under the agreement.  *See* APA §

17   11.1 ("[T[he law of the State of Delaware, irrespective of its conflicts of law principles, shall

18   govern the validity of this Agreement, the construction of its terms, and the interpretation and

19   enforcement of the rights and duties of the parties.").  The parties' contractual choice-of-law

20   provision selecting Delaware law to control the agreement is enforceable under California's

21   choice-of-law rules because Defendant Coupa is incorporated in Delaware, and thus Delaware has

22   a "substantial relationship to the parties."  11 Cal.Rptr.2d at 333.

23                             III.     **STANDARD OF REVIEW**

24       The parties do not dispute that Defendant is the prevailing party in this litigation and, thus,

25   pursuant to APA § 11.8, Defendant is entitled to reasonable attorneys' fees.  At issue is whether

26   Defendant's fee request of $627,735.81 is reasonable.

27       Under Delaware law, a court will "evaluate the reasonableness of fees under the standards

28   of Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct, and normally exclude

United States District Court
Northern District of California

3

1  excessive, redundant, duplicative, or otherwise unnecessary hours." *Carpenter v. Dinneen*, 2008

2  WL 2950765, at *1 (Del. Ch. July 3, 2008).  In applying that standard, the court considers the

3  following factors:

4  (1) the time and labor required, the novelty and difficulty of the questions involved, and the

5  skill requisite to perform the legal service properly;

6  (2) the likelihood, if apparent to the client, that the acceptance of the particular employment

7  will preclude other employment by the lawyer;

8  (3) the fee customarily charged in the locality for similar legal services;

9  (4) the amount involved and the results obtained;

10  (5) the time limitations imposed by the client or by the circumstances;

11  (6) the nature and length of the professional relationship with the client;

12  (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

13  and

14  (8) whether the fee is fixed or contingent.

15  *Mahani v. Edix Media Grp. Inc.*, 935 A.2d 242, 246 (Del. 2007) (quoting Delaware Lawyers'

16  Rules of Professional Conduct 1.5(a)).

17  "Determining reasonableness does not require that this Court examine individually each

18  time entry and disbursement." *Aveta Inc. v. Bengoa*, No. CIV.A. 3598-VCL, 2010 WL 3221823,

19  at *6 (Del. Ch. Aug. 13, 2010).  Nor does it "require the Court to assess independently whether

20  counsel appropriately pursued and charged for a particular motion, line of argument, area of

21  discovery, or other litigation tactic." *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at

22  *12 (Del. Ch. Feb. 13, 2018).  "A party's expenses are reasonable if they were 'actually paid or

23  incurred[,]. . . were. . . thought prudent and appropriate in the good faith professional judgment of

24  competent counsel[,] and were charge[d] ... at rates, or on a basis, charged to others for the same

25  or comparable services under comparable circumstances.'" *Id.* (alterations and omissions in

26  original) (quoting *Delphi Easter P'rs Ltd. P'ship v. Spectacular P'rs, Inc.*, 1993 WL 328079, at *9

27  (Del. Ch. Aug. 6, 1993)).  One "indication" of reasonableness is the "reality" that when the fee-

28  seeking party litigated the matter and "paid the expenses it now seeks to recover, [it] did not know

United States District Court
Northern District of California

1    that it would be able to shift those expenses to [the other party]." *Aveta*, 2010 WL 3221823, at *6.

2    This evidences that the fee-seeking party "had sufficient incentive to monitor its counsel's work

3    and ensure that counsel did not engage in excessive or unnecessary efforts." *Id. See also Lynch v.*

4    *Gonzalez*, No. CV 2019-0356-MTZ, 2020 WL 5587716, at *2–3 (Del. Ch. Sept. 18, 2020).

5          The party seeking an award of fees and expenses bears the burden of establishing that the

6    amount sought is reasonable. *Glob. Link Logistics, Inc. v. Olympus Growth Fund III, L.P.*, 2010

7    WL 692752, at *1 (Del. Ch. Feb. 24, 2010). The Court has broad discretion in determining the

8    amount of fees and expenses to award. *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 506 (Del. 2005).

9                  IV.    **DISCUSSION**

10          Defendant seeks attorneys' fees and expenses of $627,735.81, representing 829.9 hours of

11    billed work. Docket 80-1 ("Vanyo Decl."), Exh. 1 ("Fee Spreadsheet"). Defendant's summary of

12    its fee request indicates that its attorneys billed (i) $253,190.00 in connection with the Motion to

13    Dismiss, (ii) $161,694 in connection with the Motion to Transfer, (iii) $52,725 in connection with

14    the Motion to Compel/Remand, (iv) $51,736 on Case Analysis, (v) $45,130 in connection with

15    Removal, (vi) $46,0004 on Discovery Review and Responses, (vii) $17,306 on Administrative

16    Work, and (viii) $13,946.66 in Expenses. *See id.* Defendant received a 10% discount across these

17    fees from its counsel for its status a repeat-client. *Id.* Additionally, not included in the above

18    categories, Defendant represents that local counsel in Florida billed $68,350.00. *Id.*

19          Plaintiff makes five arguments in opposition to Defendant's fee request: (a) Defendant's

20    Fee Spreadsheet lacks sufficient specificity; (b) Defendant's attorneys' hourly rates are

21    unreasonably high, (c) The time and skill required to defend this action does not support the fee

22    request, (d) the time limitations imposed by the circumstances do not support the fee request, and

23    (e) the amount involved and results obtained do not support the fee request. Plaintiff argues that

24    Court should substantially reduce Defendant's fee award to an amounting ranging from $73,454 to

25    $86,761. Docket No. 74 ("Opp.") at 4.

26    A.    Sufficiency of Defendant's Fee Spreadsheet

27          Under Delaware Law, "[i]n every case in which an application to the Court is made for a

28    fee or for reimbursement for expenses or services the Court shall require the applicant to make an

1    affidavit or submit a letter, as the Court may direct, itemizing (1) the amount which has been

2    received, or will be received, for that purpose from any source, and (2) the expenses incurred and

3    services rendered, before making such an allowance."  Del. Ch. Ct. R. 88.[1]

4           Plaintiff argues the Fee Spreadsheet does not meet the requirements of Delaware law

5    because "instead of clearly showing the work performed by each attorney and the hours billed for

6    their services" the Fee Spreadsheet "splits the attorney's 829.9 billable hours into general, vague

7    and overlapping categories."  Opp. at 6.  Plaintiff further argues that Delaware law requires a party

8    seeking fees to "provide a detailed invoice identifying the fees and expenses" and the "invoice

9    shall provide for each time entry the date, timekeeper, billing rate, task, description, time incurred,

10   and amount charged."  *Id.* (citing *Weil v. VEREIT Operating P'ship, L.P.*, CV 2017-0613-JTL,

11   2018 WL 834428, at *14 (Del. Ch. Feb. 13, 2018).

12          Plaintiff is partially correct.  Defendant is *not* required to submit detailed invoices to

13   support its fee request.  The language Defendant cites from *Weil* does not interpret Del. Ch. Ct. R.

14   88, which the parties agree applies here, but, rather is derived from a discussion about procedures

15   applying the rule in *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 1002 (Del. Ch. 2012) to manage

16   "corporate advancement," through which Delaware counsel (not the court or an adversary in the

17   underlying litigation) is charged with reviewing and certifying invoices from out-of-state counsel

18   for work done *after* the court has made an initial determination about the availability of

19   advancement.  *Weil,* 2018 WL 834428, at *14.  Indeed, Plaintiff cites cases which apply Del. Ch.

20   Ct. R. 88 and approved fee requests based on information that is similar, in several instances, to

21   the information submitted by Defendant.  *Compare Preferred Invs., Inc. v. T & H Bail Bonds*, No.

22   CIV. A. 5886-VCP, 2014 WL 1292362, at *3 (Del. Ch. Mar. 25, 2014) (approving a fee award

23   where the moving party identified "the specific individuals who worked on the case, their position,

24   their respective hourly billing rates, and the number of hours each individual billed on the case" as

25

26   ---
     [1] The evidentiary requirement pursuant to Northern District of California Civil Local Rule 54-
27   5(b)(2) is substantially similar.  The party seeking attorney's fees is required to provide "a
     statement of the services rendered by each person for whose services fees are claimed, together
28   with a summary of the time spent by each person, and a statement describing the manner in which
     time records were maintained."  L.R. 54-5(b)(2).

United States District Court
Northern District of California

1    well as an "hour breakdown of specific tasks performed throughout the litigation") *with* Fee

2    Spreadsheet; *see also Weichert Co. of Pennsylvania v. Young*, No. CIV.A. 2223-VCL, 2008 WL

3    1914309, at *2 (Del. Ch. May 1, 2008) ("A discussion of each specific invoice item that

4    [Defendant] contests would neither be useful nor practicable.").

5          But Defendant is correct in pointing out that, nonetheless, some of Defendant's entries in

6    its fee spreadsheet lack sufficient detail or explanation for the Court to analyze for reasonableness.

7    *See In re TransPerfect Glob., Inc.,* No. CV 10449-CB, 2021 WL 1711797, at *31 (Del. Ch. Apr.

8    30, 2021) ("The relevant inquiry is whether the use of block billing "make[s] it more difficult for a

9    court to assess the reasonableness of the hours claimed.").

10         For example, Defendant groups together all of the tasks that the two local Florida counsel

11   completed into single entries, and provides a summary total amount of hours that they billed for

12   those tasks.  *See* Feed Spreadsheet § Local Counsel Fees (Marcil billed 41.4 hours amounting to

13   $30,015.00 for "Work on the Corporate Disclosure Form, Notice of Remand, Civil Covers Sheet,

14   Notice of Filing Notice of Removal, Conferences with Opposing Counsel, Motion to Seal,

15   Request for Judicial Notice, Insurance Coverage analysis, Motion for Admission Pro Hac Vice,

16   Rule 26(f) Conference, Initial Disclosures, and Joint Scheduling Report"), (Nicole billed 69.7

17   hours amounting to $38,335.00 for "Work on the Motion to Determine Confidentiality, Motion to

18   Transfer, Motion for Extension to Respond to Complaint, Motion to File Under Seal, Motion to

19   Dismiss, the Removal Status Report, Opposition to Motion to Remand, and the Reply in Support

20   of the Motion to Dismiss.").  Defendant acknowledges that Florida counsel "has not yet provided

21   an itemized accounting of its work."  Docket No. 70 ("Motion") at 5 n.3.  **As such, the $68,350**

22   **fee request for Florida counsel do not satisfy the requirements of Del. Ch. Ct. R. 88 and**

23   **should be denied.**

24         Likewise, Defendant includes a line item for "Research expenses in drafting briefs" of

25   $13,946.66. *See* Fee Spreadsheet § Expenses.  **This description is too vague to satisfy**

26   **Defendant's evidentiary burden, and thus this expense should also be excluded from**

27   **Defendant's fee award.**

28         Similarly, in several entries, Defendant includes brief summaries of the nature of dozens of

United States District Court
Northern District of California

United States District Court
Northern District of California

1    hours of work amounting to tens of thousands of dollars.  For example, over the course of three

2    months, Attorney Garmey billed 95.70 hours amounting to $74,090.50.  Fee Spreadsheet § Motion

3    to Transfer.  The entire explanation for this entry is: "Work on motion to transfer; research fraud

4    pleading standards as related to forum selection clauses; work on reply in support of motion to

5    transfer." *Id.*  Elsewhere, Attorney Garmey bills 58.2 hours amounting to $44,594 for "[w]ork on

6    opening and rely briefs" with regards to Defendant's motion to dismiss.  *Id.* § Motion to Dismiss.

7    And four attorneys collectively billed 51.4 hours amounting to $46.004.50 for "Work on response

8    to request for production and initial disclosures" and "conduct initial interviews" for discovery

9    that was not ultimately produced to the opposing party before this case was dismissed and

10   judgment entered.  *Id.* § Discovery Review and Responses.  Although these entries are not so

11   lacking as to prevent the Court from understanding the nature of the work that was completed, and

12   do not require outright rejection for failure to satisfy Del. Ch. Ct. R. 88, *see In re TransPerfect*

13   *Glob., Inc.*, No. CV 10449-CB, 2021 WL 1711797, at *31 (Del. Ch. Apr. 30, 2021) ("Delaware

14   courts have noted the absence of any Delaware case that finds block-billing objectionable *per*

15   *se*."), the generic explanations will weigh in the Court's analysis of the extent to which Defendant

16   has billed "excessive, redundant, duplicative, or otherwise unnecessary hours." *Carpenter v.*

17   *Dinneen*, 2008 WL 2950765, at *1.

18   B.      Hourly Rates

19          Defendant states the hourly billing rates for the four Katten attorneys on this case are:

20   Bruce Vanyo (Partner, 40+ years of experience): $1,485 – $1,555; Christina Costley (Partner, 17+

21   years of experience): $920 – $970; Trevor Garmey (Associate, 7+ years of experience): $765 –

22   $775; and Deeksha Kohli (Associate, <1 year experience): $525 – $540.  *See* Vanyo Decl. ¶¶ 3-6.

23   Defendant declares the fees set forth are reasonable and comparable to those charged in Los

24   Angeles, CA, where the Katten attorneys are based, for comparable work.  *Id.* ¶ 11.  These rates

25   do not include a 10% across the board reduction in the amount that Katten billed to Defendant as a

26   repeat client and seeks in this fee request.

27          Plaintiff argues these hourly rates are excessive and unsupported by evidence.  Opp. at 11-

28   13.  Plaintiff cites a table produced by its expert to argue that Vanyo's rate should be $920,

8

1    Costley's rate $735, Kohli's rate $372 and Garmey's $230.  *Id.*  Plaintiff's argument is unavailing.

2    Defendant is correct in pointing out that in corporate disputes involving allegations of fraud or

3    controversy related to post-acquisition pricing, like this case, the Delaware Court of Chancery

4    recently approved hourly rates for attorneys that were higher than those here at issue based on

5    counsel affidavits regarding rates for comparable work that are substantially similar to the Vanyo

6    Declaration.  *See Roma Landmark Theaters, LLC et al. v. Cohen Exhibition Co. LLC.*, No. CV

7    2019-0585-PAF, 2021 WL 5174088, at *6 (Del. Ch. Nov. 8, 2021) (approving a New York-based

8    securities litigation "partner's hourly rate of $1,645" based on a lead counsel attestation that "[t]he

9    rates that Gibson Dunn charged Plaintiffs for representation in this matter are the customary

10   billing rates that Gibson Dunn regularly charged its clients for other matters during the relevant

11   time periods."); *In re TransPerfect*, 2021 WL 1711797 at *24 (approving Delaware-based partner

12   rates of $1,225 to $1,775 and associate rates of $695 to $1,120 based on a partner attestation that

13   "the hourly rates charged by [the firm] in this matter are consistent with the hourly rates charged

14   . . . to clients represented outside this matter").

15           Further, Plaintiff's citation to *Bethea v. Rash*, for the rule that "out-of-town lawyer would

16   receive not the hourly rate prescribed by his district but rather the hourly rate prevailing in the

17   forum in which the litigation is lodged" is inapposite because that case did not apply Delaware

18   law, but, rather, the Third Circuit's interpretation of federal law.  No. CV 11-1045-SLR, 2015 WL

19   4477693, at *3 n.8 (D. Del. July 22, 2015) (quoting *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,

20   426 F.3d 694, 703 (3d Cir. 2005)).  Delaware courts applying Delaware have law approved

21   attorney rates based on consideration of the rates charged in the locality in which the attorney sits.

22   *See Lynch v. Gonzalez*, No. CV 2019-0356-MTZ, 2020 WL 5587716, at *3 n.25 (Del. Ch. Sept.

23   18, 2020), *aff'd*, 253 A.3d 556 (Del. 2021) (approving attorney rates by comparing to "average

24   partner rate at a similar boutique litigation firm in Miami" where counsel was based); *Weichert*

25   *Co. of Pennsylvania v. Young*, No. CIV.A. 2223-VCL, 2008 WL 1914309, at *3 (Del. Ch. May 1,

26   2008) (rejecting argument that hourly rate of Plaintiff's New Jersey-based counsel was excessive

27   because it was greater than the amount charged by Plaintiff's Delaware-based counsel); *cf. Aveta*

28   *Inc. v. Bengoa*, No. CIV.A. 3598-VCL, 2010 WL 3221823, at *8 (Del. Ch. Aug. 13, 2010) ("The

United States District Court
Northern District of California

1    hourly rates charged by Aveta's counsel [based in New York and Delaware] are not excessive.

2    They are consistent with market rates for attorneys with reputable and sophisticated firms.").

3    C.    <u>Time and Skill Required, Time Limitations, Amount Involved and Results Obtained</u>

4          The parties dispute whether the remaining applicable discretionary factors for the Court's

5    consideration under Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct,

6    including the results obtained, amount involved, time limitations imposed by the client or by the

7    circumstances, time and labor required and, novelty and difficulty of the questions involved,

8    weigh in favor of finding that Defendant's fee request reasonable.

9          *Results Obtained and Amount Involved:* Defendant successfully obtained the results its

10   sought at each stage in the litigation.  It filed three substantive motions—to remove the case to

11   federal court, to transfer venue and to dismiss—and succeeded on each.  *See* Docket Nos. 1, 46,

12   68, 69.  It also successfully defended against Plaintiff's motion to compel and/or remand.  Docket

13   No. 68.  Moreover, Defendant obtained dismissal of Plaintiff's complaint with prejudice on its

14   first motion to dismiss.  *See* Docket No. 68.

15         Plaintiff alleged that Defendant was liable for more than $72 million; so, Defendant's

16   counsel's completely successful defense of its client is of significant consequence to Defendant.

17   Defendant, thus, contends that, in light of its complete defense of this case, its request for

18   attorneys' fees of less than 1% of the amount in issue weighs heavily in favor of a finding of

19   reasonableness.  Motion at 7; *Sparton Corp. v. O'Neil*, No. CV 12403-VCMR, 2018 WL 3025470,

20   at *6 (Del. Ch. June 18, 2018) (finding fee request of $447k reasonable, in part, because the claims

21   for which counsel obtained dismissal were valued at $2.6 million).

22         Significantly, Defendant relies on the fact that it *actually paid* the costs incurred by its

23   counsel *before* it knew that it would be entitled to fee-shifting as support for the reasonableness of

24   the fees.  Vanyo Decl. ¶ 8; s*ee Aveta Inc. v. Bengoa*, No. CIV.A. 3598-VCL, 2010 WL 3221823,

25   at *6 (Del. Ch. Aug. 13, 2010) ("A further indication of reasonableness is the reality that when

26   Aveta filed its motion to enforce and paid the expenses it now seeks to recover, Aveta did not

27   know that it would be able to shift those expenses to Bengoa.  Aveta had a potential claim to

28   recover fees under Section 13.5 of the Purchase Agreement, but only if Aveta prevailed.  If not,

United States District Court
Northern District of California

10

1    then Aveta would bear its own expenses.  Aveta therefore had sufficient incentive to monitor its

2    counsel's work and ensure that counsel did not engage in excessive or unnecessary efforts."); *see*

3    *also Bartlett*, 2002 WL 568417, at *6 ("an arm's-length agreement, particularly with a

4    sophisticated client, as in this instance, can provide an initial 'rough cut' of a commercially

5    reasonable fee"); *Arbitrium*, 1998 WL 155550, at *2 (considering that client had retained counsel

6    on non-contingent basis and faced prospect of bearing full cost of litigation effort); *see also First*

7    *Fed. Sav. & Loan Ass'n v. United States*, 88 Fed. Cl. 572, 585 (2009) (holding that plaintiff "had

8    every incentive to exercise control over the work of its counsel and to monitor closely the cost of

9    the litigation" given the "lack of any assurance" that it would prevail); *Fla. Rock Indus., Inc. v.*

10   *United States*, 9 Cl. Ct. 285, 289 (1985) ("the risk of abuse is minimal because plaintiff has no

11   assurance of recovering and must assume it will bear the full cost of the litigation").  Plaintiff does

12   not dispute this principal under Delaware law, nor its application here – other than emphasizing

13   that this factor, on its own, is not dispositive.  Opp. at 14.  Plaintiff is correct that this factor is one

14   of many for the Court's consideration.  Nonetheless, it is entitled to weight in favor of Defendant's

15   fee request.

16          Plaintiff complains that Defendant should not be over-credited for its successful motion

17   practice in this case because all of the motions were not strictly necessary for the final outcome,

18   such as removal of the case from state court to federal court, and transfer of venue from to the

19   Southern District of Florida to the Northern District of California.  Opp. at 15.  But Plaintiff is in a

20   weak position to object to litigation expenses incurred as a result of Plaintiff's own actions.  *See*

21   *Sparton Corp.*, 2018 WL 3025470, at *6 (granting fee petition where the other party's "own

22   conduct" necessitated much of the work).  Indeed, here Plaintiff filed the suit in state court in

23   Florida, in conflict with an express venue provision.  APA § 11.1.  Defendant had a right under the

24   contract to move to litigate this case in the venue it bargained for.  Nonetheless, Plaintiff continued

25   to litigate the issue and advanced spurious procedural arguments to seek remand of the case and,

26   later, to compel Defendant to produce documents to which it was not entitled.  The Court

27   ultimately rejected these arguments, *see* Docket No. 68 at 6-8, but Defendant was obligated to

28   spend resources to defend against them.  That Defendant was successful in doing so weighs in

United States District Court
Northern District of California

11

1    Defendant's favor for the purposes of its fee request.

2           *Time Limitations Imposed by the Circumstances:* Defendant argues that the time

3    limitations in this case also support its requested fee award, in part, because it had to manage

4    researching and filing its motion to change venue and motion to dismiss concurrently.  Motion at

5    9.  This observation is factually accurate, but not out of the ordinary for a case which involves

6    filing of both motions.  This factor, therefore, may tilt in favor of Defendant, but not significantly

7    so.

8           *Time Required/Difficulty of Issues:* While Defendant has persuasively shown that several

9    factors under Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct tip in favor of

10   finding its fee request reasonable, fees may be reduced when attorneys engage in excessive work –

11   when the fee request is not commensurate with the work reasonably and necessarily required on a

12   given task.  *See, e.g., In re SS&C Techs.*, 2008 WL 3271242, at *4 (holding that plaintiffs will not

13   be responsible for excessive work by defendant's counsel and reducing fee from $843,644.06

14   request by 70% to an award of $250,000); *Parfi Holding AB v. Mirror Image Internet*, Inc., 954

15   A.2d 911, 944 (Del. Ch. 2008) (reducing fees by 25% where excessive hours were spent

16   disproportionate to what it should have taken for the task); *Concord Steel, Inc. v. Wilmington Steel*

17   *Processing Co.*, No. CIVA3369VCP, 2010 WL 571934, at *4 (Del. Ch. Feb. 5, 2010) (finding the

18   amount of time billed by firm partners to be excessive, thus reducing the fee award by 20% for

19   fees incurred by the partners).

20          While Plaintiff pursued some spurious procedural arguments that required Defendant to

21   expend resources to mount somewhat uncommon defenses, at bottom, this case was a contract

22   dispute governed by a single contract, the APA.  Indeed, the Court's reasoning in dismissing

23   Plaintiff's complaint with prejudice turned entirely on interpretation of the provisions of APA.

24   *See* Docket No. 68.  The motion to dismiss did not present particularly novel or difficult questions.

25   Similarly, Defendant's motion to transfer venue also relied on an express contractual provision in

26   the APA and was not a particularly challenging matter of law.  Defendant concedes as much.

27   Motion at 4 ("Plaintiff's efforts were so clearly unwarranted that the Southern District of Florida

28   did not even wait for briefing to close before issuing its August 6, 2021 opinion 'agree[ing] with

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendant' and criticizing Plaintiff's use of 'convoluted argument' to contravene the 'clear

2    language of the forum selection clause.'").

3              Thus, the Court is skeptical as to whether it was *necessary* for Defendant to expend 182

4    hours on the motion to transfer, 56 hours on the motion to compel/remand, 306 hours on the

5    motion to dismiss, and 54 hours on removal. *See* Fee Spreadsheet. The Court is particularly

6    skeptical about the 51 hours on discovery review for productions that Defendant concedes were

7    never ultimately turned over to opposing counsel. Docket No. 78 ("Reply") at 9-10. Moreover,

8    Defendant's entries for items such as "Case Analysis" and "Administrative" include tasks such as

9    "review pleadings, strategize what motions to bring and when" and "keep track of court deadlines"

10   which amount to over 65 hours of work and nearly $70,000 expenses when it is not clear how

11   those tasks differ, materially, from Defendant's repeated entries about "work" on its various

12   substantive motions. While the Court largely defers Defendant's allocation of litigation resources

13   in light of Defendant's success across the board in this litigation, the Court, nonetheless, finds that

14   the substantive issues in this case were not so complex and novel as to *require all* of the hours of

15   work which Defendant has billed. Based on the nature of the motions, the Court finds hours spent

16   exceed a reasonable number of hours and warrants a 30% reduction from the remaining fees not

17   already excluded. This reduction is consistent with the reductions made by Delaware courts in

18   similar circumstances. *See Parfi Holding AB*., 954 A.2d at 944; *In re SS&C Techs.*, 2008 WL

19   3271242, at *4; *Concord Steel, Inc.*, 2010 WL 571934, at *4 (Del. Ch. Feb. 5, 2010).

20   D.       Summary of the Court's Reductions to Plaintiff's Fee Request

21             Defendant requested a fee award of $627,735.81. The Court excludes Defendant's request

22   for $68,350.00 for Florida counsel and $13,946.66 for unidentified expenses because these

23   requests lack sufficient evidentiary support. The Court reduces the remaining $545,439.15 request

24   by 30% to account for Defendant's counsel unnecessary and excessive work. Thus, the Court

25   grants Defendant a reasonable fee award in the amount of $381,807.40.

26   ///

27   ///

28   ///

1

## V.   CONCLUSION

2          The foregoing reasons, Defendant's motion for attorneys' fees is **GRANTED in PART** in

3     the amount of $381.807.40.

4          This order disposes of Docket No. 70.

5

6          **IT IS SO ORDERED**.

7

8     Dated: February 9, 2022

9

10          _____

11                    EDWARD M. CHEN
                      United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28